# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| WENDY UNTERSHINE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>v.<br><br>CAWLEY & BERGMANN LLC,<br><br>    Defendant. | Case No.: 19-cv-654<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Wendy Untershine is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Cawley & Bergmann, LLC ("Cawley") is a debt collection agency with its principal offices located at 550 Broad Street, Suite 1001, Newark, New Jersey 07102.

6. Cawley is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Cawley is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

8. Cawley is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or about February 5, 2019, Cawley mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Cavalry SPV I, LLC." The letter additionally listed the original creditor as "Synchrony Bank/Blains Farm." A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt that Cawley was attempting to collect was incurred by use of a store-branded credit card, used exclusively for the purchase of personal, family, or household items, including items from "Blains Farm & Fleet" stores.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A is the first written communication that Defendant sent to Plaintiff regarding the alleged debt to which Exhibit A refers.

14. <u>Exhibit A</u> includes a statement which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> Unless you, within 30 days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by this office. If you notify this office in writing within the 30-day period that the debt, or any portion hereof, is disputed, this office will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by this office. Upon your written request within the 30-day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.

15. Upon information and belief, if <u>Exhibit A</u> was actually mailed on February 5, 2019, it would have been received on or after February 7, 2019.

16. If <u>Exhibit A</u> was received on February 7, 2019, the consumer would have until March 9, 2019 to mail out a request for validation. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (consumer triggers verification rights by mailing out written notice of dispute on thirtieth day after receiving validation notice).

17. <u>Exhibit A</u> also contains the following settlement offers:

| Single Payment Option: | 2 Month Payment Plan: | Balance in Full Payment Plan: |
|---|---|---|
| ➢ Take $750.25 off the balance.<br>➢ Pay $1,750.58 no later than 03/22/19.<br>➢ Your account will be considered "**Settled in Full**" after we post your payment.* | ➢ Take $500.17 off the balance.<br>➢ Pay over 2 equal monthly installments of $1,000.33.<br>➢ First Payment due no later than 03/22/19 and every 30 days thereafter.<br>➢ Your account will be considered "**Settled in Full**" after we post your final payment.* | ➢ Subject to your rights described in this letter, contact us to discuss an affordable monthly payment arrangement.<br>➢ Your account will be considered "**Paid in Full**" once the account reaches a zero balance. |

18. Two of the three above offers require that the consumer's payment be received by March 22, 2017.

19. <u>Exhibit A</u> also includes the following representation:

> *Your payment must be received in our office by the date indicated above, in good funds, or this offer will be null and void. Upon clearance of funds this debt will be considered settled in full. We are not obligated to renew this offer.

3

20. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading where such offer is available at any time.

21. Such statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

22. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

23. Although <u>Exhibit A</u> includes the safe harbor language prescribed by *Evory*, such safe harbor language is overshadowed by the letter's prior statement that "Your payment must be received in our office by the date indicated above, in good funds, or this offer will be null and void. Upon clearance of funds this debt will be considered settled in full."

24. The implication of the safe harbor language, understood in the context of the letter, is that the "renewal possibility" only exists if the consumer accepts the offer but the payment does not clear. *See, e.g., Al v. Van Ru Credit Corp.*, No. 17-cv-1738, 2018 U.S. Dist. LEXIS 70321, at *9-10 (E.D. Wis. Apr. 26, 2018) ("How the safe-harbor language would affect an unsophisticated consumer is a fact-specific question not amenable to resolution on a motion to dismiss."); *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 834 (D.N.J. 2018)

4

("courts have found that if a collection letter contains the language, 'we are not obligated to renew this offer,' it does not violate the FDCPA, so long as the rest of the language in the collection letter does not contradict that safe harbor language.").

25. Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion. *See Boucher v. Fin. Sys. of Green Bay*, 2018 U.S. App. LEXIS 1094, at *17 ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor for debt collectors who want to avoid liability for the kind of suit Bartlett has brought and now won. The qualification "for the kind of suit that Bartlett has brought and now won" is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

26. Reading the letter as a whole, the unsophisticated would understand the settlement offer included in <u>Exhibit A</u> had a deadline of March 22, 2019. In the context of the letter, the unsophisticated consumer would not understand the phrase "we are not obligated to renew this offer" to mean that "renewal [of the settlement offer is a] possibility but that it is not assured." *See Evory*, 505 F.3d at 775-76.

5

Case 2:19-cv-00654-WED    Filed 05/03/19    Page 5 of 15    Document 1

27. Upon information and belief, the deadline in Exhibit A to respond to the settlement offer is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

28. Upon information and belief, Cawley had authority from the creditor to settle Plaintiff's account for the amounts offered by Exhibit A, or less, at any time.

29. Exhibit A thus overshadows and contradicts the statement that "We are not obligated to renew this offer" by including it after the instruction that "Your payment must be received in our office by the date indicated above, in good funds, or this offer will be null and void."

30. Indeed, the representation in Exhibit A that payment must be received "in good funds" further indicates to the consumer that payment must not only must be *received* by March 22, 2019, but that payment have *cleared* by March 22, 2019, suggesting that payment must actually be received several days *prior* to March 22, 2019.

31. Furthermore, a consumer, unsure whether the offers would still be available after the March 22, 2019 deadline, would feel compelled to allow for an extra two or three days for mailing and processing to ensure they were able to take advantage of the settlement offers in Exhibit A and that the payment would not be processed as a partial payment on the full balance.

32. The 30-day validation period identified in Exhibit A would end at or around the same time the consumer would feel compelled to mail out a payment to take advantage of the settlement offer in Exhibit A before it expires. *See* 15 U.S.C. § 1692g(a).

33. Assuming the consumer sought verification at or near the end of the statutorily mandated 30-day validation period, there would be no way for Cawley to provide verification in time for the consumer to tender payment in acceptance.

34. The unsophisticated consumer, realizing that the debt could not be verified before the settlement offer in Exhibit A expired and that Cawley was not obligated to renew the offer would be unsure how, or whether, they could seek verification of the debt but accept the settlement offer if the debt could be verified.

35. The settlement offer in Exhibit A is confusing to the unsophisticated consumer because it requires that the consumer tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

36. Exhibit A does not explain how, or even whether, a consumer may request verification of the debt and accept the settlement offer if the debt is verified. *See, e.g.*, *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

37. Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

38. Because the settlement offer in Exhibit A expires at or around the same time as the validation period, there is an apparent contradiction between the settlement offer and the validation notice. *See Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. 2008) ("The extended time for taking advantage of the settlement offer – couched within a personalized assurance that all her rights will be preserved through oral communication –

7

effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights.").

39. In the context of an initial settlement letter, the unsophisticated consumer would believe that the foregoing of validation rights is a material aspect of the settlement offer and would understand the language that the debt collector is "not obligated to renew" to mean that the debt collector would most likely *not* renew the offer, since the debtor would no longer have validation rights to bargain away. *See, e.g., Glackin v. LTD Fin. Servs., L.P.*, 2013 U.S. Dist. ELXIS 108031, at *7-8 (E.D. Mo. Aug. 1, 2013) ("an unsophisticated consumer would likely believe that setting up payment arrangements *would act as a waiver of the right to dispute the debt*.") (emphasis added).

40. The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

41. Alternatively, the unsophisticated consumer, wishing to take advantage of the settlement offer as long as it could be verified, could tender her payment to accept the settlement offer along with the notice of dispute, but even then they would have no way of knowing whether or how she could receive her money back from Cawley if it were unable to verify the debt or if the debt actually is not valid.

42. In fact, though the unsophisticated consumer would not realize it, the debt collector need not even verify the debt as long as it ceases further attempts to collect the debt. *See Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).

43. The plain language of Exhibit A is unclear as to how Cawley would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

44. Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in Exhibit A, under the terms of Exhibit A, Cawley might:

   a. Hold the payment in escrow pending verification of the debt;

   b. Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

   c. Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

45. Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

46. Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit. *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation. In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

47. The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

48. The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter. If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F.

9

Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

49. Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the expiration date would lapse before the consumer had effectively made the settlement payment. By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

50. Ultimately, the purpose and effect of providing a settlement offer with a letter containing the validation notice is to discourage the unsophisticated consumer from submitting a written dispute.

51. Moreover, the "2 Month Payment Plan" contains the following payment schedule:

> First Payment due no later than 03/22/19 and every 30 days thereafter.

52. On the face of Exhibit A it is impossible to determine when the *second payment* is due.

53. Exhibit A states that the first payment is due "no later" than March 22, 2019, and that the second payment is due "30 days thereafter" but it is unclear whether the second payment is due 30 days after receipt of the first payment or 30 days after March 22, 2019.

54. Plaintiff was misled and confused by Exhibit A.

55. The unsophisticated consumer would be misled and confused by Exhibit A.

## *The FDCPA*

56. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("Spuhler I") ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS

81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see alsoMogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

57. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

58. 15 U.S.C. § 1692e generally prohibits: "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

59. 15 U.S.C. § 1692e(5) specifically prohibits: "the threat to take any action that cannot legally be taken or that is not intended to be taken."

60. 15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

61. 15 U.S.C. § 1692g(b) states, in relevant part:

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

## **COUNT I – FDCPA**

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

63. By including the statement "we are not obligated to renew this offer" after the statement "Your payment must be received in our office by the date indicated above, in good funds, or this offer will be null and void," Exhibit A does not clearly indicate to the consumer that there was a renewal possibility if the consumer did not make a payment on the account prior to the expiration date.

64. The unsophisticated consumer would be confused as to the due date for the second payment under the "2 Month Payment Plan."

65. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

## COUNT II – FDCPA

66. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. By including settlement offers which purportedly expired on or soon after the expiration of the validation period, Exhibit A overshadows the validation notice and is therefore false, deceptive, and misleading as to the consumers right to dispute and/or request verification of their alleged debt.

68. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692g(b).

## CLASS ALLEGATIONS

69. Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between May 3, 2018 and May 3, 2019, inclusive, (e) that was not returned by the postal service.

70. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

71. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with 15 U.S.C. § 1692e, 1692e(10), and 1692g.

72. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

14

73. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

74. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

75. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 3, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com